UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CARMEN ROBLES,

               Plaintiff,

       -against-

COX AND COMPANY, INC,

               Defendant.
-------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   JAN 1 0 2012   ★

**LONG ISLAND OFFICE**

**MEMORANDUM OF
DECISION AND ORDER**
11-CV-1975 (ADS) (GRB)

**APPEARANCES:**

**Law Offices of Adeline Ellis**
*Attorney for the Plaintiff*
P.O. Box 544
Great Barrington, MA 01230
     By:  Adeline Ellis, Esq., Of Counsel

**Clifton, Budd & DeMaria, LLP**
*Attorneys for the Defendant*
420 Lexington Ave., 4th Floor
New York, NY 10170
     By:  Jennifer M. Marrinan, Esq., Of Counsel

**SPATT, District Judge.**

On April 21, 2011, Carmen Robles ("Robles" or "the Plaintiff") commenced this lawsuit

against her former employer, Cox and Company, Inc. ("Cox" or "the Defendant"), alleging that,

by terminating her employment, Cox engaged in unlawful age discrimination under the Age

Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.; Title VII of the

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e et seq.; the New York State Human

Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq.; and the New York City Human Rights

Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(1)(a) et seq.; retaliation under Title VII; and

breach of express and implied contract and intentional infliction of emotional distress under New

York common law.

1

Presently before the Court is a partial motion to dismiss by the Defendant pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) to dismiss the following claims:  (1) age discrimination under the NYCHRL; (2) retaliation under Title VII; (3) intentional infliction of emotional distress; and (4) breach of contract.  For the reasons set forth below the Defendant's motion is granted in part and denied in part.

## I. BACKGROUND

Unless otherwise stated, the following facts are drawn from the Plaintiff's complaint and the documents incorporated by reference therein.

The plaintiff, Carmen Robles is a resident of Brooklyn, New York.  The defendant, Cox and Company, Inc., is incorporated under New York State law and has its principal place of business in Plainview, New York.  On July 30, 1968, Cox hired Robles to work for the company, which at that time was located in New York City.  Robles worked as an assembly line worker, solderer, and stockroom clerk.  During the course of her employment with Cox, and at an unspecified time, Robles was promoted to group leader.  Robles alleges that she received many awards for her work and innovative ideas, and that her supervisor also recommended her to train inspectors in soldering.

For an unspecified time period during Robles' employment, Cox allegedly exposed Robles to harmful toxins and fiberglass, causing Robles to suffer an allergic reaction.  Robles was diagnosed with a job-related injury, resulting in Cox's medical consultant, at an unspecified date, directing Cox to address Robles' job-related injury by preventing Robles from further exposure to the harmful toxins and fiberglass.

On October 9, 1998, Cox terminated Robles' employment on the ground that Robles allegedly hid blueprints in her locker.  Robles contested her termination, alleging that the

2

blueprints were only a pretext for her termination. She subsequently sued Cox for quid pro quo

sexual harassment, hostile work environment, and retaliation ("the 1999 lawsuit"). In 2001, Cox

and Robles entered into a settlement agreement (the "2001 settlement agreement"). In the 2001

settlement agreement, Cox agreed to reinstate Robles to her former position on the assembly line

as a solderer on the third floor and not to discriminate against her.

Robles returned to work on January 28, 2002. Although the 2001 settlement agreement

stated that Robles was to resume her former position on the third floor, when Robles returned to

work, Cox assigned Robles to the second floor. Cox informed Robles that the reason it did not

return her to the third floor, as specified in the 2001 settlement agreement, was because the wife

of her alleged sexual harasser worked on the third floor. Cox also explained in a letter to Robles'

attorney that it had no physical space for Robles on the third floor and that she did not know how

to perform the type of soldering that was performed on the third floor.

On the second floor, Robles was immediately exposed to the same harmful toxins and

fiberglass from which she previously received her job-related injury. After an intervention by

Robles' attorney and threats to return to court, Cox moved Robles from the second floor to the

stockroom. In the stockroom, Robles worked with her supervisor and three other employees, all

of whom were younger and less senior than Robles. At an unspecified date in the beginning of

2009, Cox relocated its operation from New York City, to Plainview, New York in Long Island.

(Def.'s Br. at 1.) Approximately three and a half months later, on April 24, 2009, Cox

terminated Robles' employment. Robles' three stockroom coworkers, who were younger than

Robles, continued to be employed by Cox.

On May 4, 2009, Robles filed a complaint with the New York State Division of Human

Rights (the "NYSDHR") and the United States Equal Employment Opportunity Commission

3

(the "EEOC") alleging age, race, and national origin discrimination in her termination (the "original charge"). On September 10, 2009, Robles alleges that she filed an amended complaint with the NYSDHR to include a charge of retaliatory termination in violation of Title VII and the NYSHRL based on the 1999 lawsuit (the "amended charge"). On July 21, 2010, the NYSDHR issued a Determination After Investigation finding probable cause for the claims in the original charge, and recommending the matter for public hearing. (Compl., Ex. A.)

At some point thereafter, the Plaintiff requested that the NYSDHR dismiss the complaint and annul the election of remedies so that the case may be pursued in court. On December 6, 2010, the administrative law judge issued an order recommending that the Plaintiff's request for an annulment of the election of remedies be granted. (Compl., Ex. B.) On January 7, 2011 the NYSDHR adopted the recommendation and dismissed the complaint. (Compl., Ex. C.) On March 18, 2011, the EEOC dismissed Robles' complaint based on her decision to pursue the matter in court, and issued a right-to-sue letter ("EEOC Right to Sue Letter"). (Compl., Ex. D.)

On April 21, 2011, Robles commenced this action within ninety days of receipt of the EEOC Notice, claiming that Cox engaged in: (1) unlawful age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e et seq.; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq.; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(1)(a) et seq.; (2) retaliation under Title VII; (3) breach of express and implied contract; and (4) intentional infliction of emotional distress.

On July 7, 2011, pursuant to Fed. R. Civ. P. 12(b)(6), Cox filed a partial motion to dismiss the following claims for failure to state a claim: (1) age discrimination under the NYCHRL; (2) retaliation under Title VII; (3) intentional infliction of emotional distress; and

(4) breach of contract. In addition, Cox also moved dismiss the Title VII retaliation claim pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that Robles failed to exhaust her administrative remedies.

## II. DISCUSSION

### A. Legal Standard for a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles. Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. (quoting Iqbal, 129 S. Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context–specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiffs' favor. Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists

Secs. Litig., 503 F.3d 89, 91 (2d Cir.2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

**B. As to the Age Discrimination Claim Under the New York City Human Rights Law**

The Plaintiff, a New York City resident, alleges that the Defendant, a New York corporation with its principal place of business in Plainview, New York, engaged in unlawful age discrimination under the NYCHRL when they terminated her employment on April 24, 2009. The Defendant contends that because the 2009 termination occurred at its location in Plainview, outside the boundaries of New York City, the Plaintiff cannot state a claim for age discrimination under the NYCHRL. The Court agrees.

Title 8 of the New York City Administrative Code, makes it unlawful for an employer to discharge from employment, or to discriminate against in compensation or in the terms, conditions or privileges of employment, any person based on their "actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status". N.Y.C. Admin. Code § 8–107(1)(a). To state a claim under the NYCHRL, the Plaintiff must allege that the Defendant discriminated against her "within the boundaries of New York City". Shah v. Wilco Sys., Inc., 27 A.D.3d 169, 175, 806 N.Y.S.2d 553, 558 (1st Dep't 2005); Fried v. LVI Servs., Inc., No. 10-CV-9308, 2011 WL 4633985, at *12 (S.D.N.Y. Oct. 4, 2011) ("The NYCHRL expressly limits the applicability of its

protections to acts that occur within the boundaries of New York City." ) (citing N.Y.C. Admin. Code § 2-201). "[T]o determine the location of the discrimination under the NYCHRL, courts look to the location of the impact of the offensive conduct." Curto v. Med. World Commc'ns, Inc., 388 F. Supp. 2d 101, 109 (E.D.N.Y. 2005).

As an initial matter, the Plaintiff contends that she has stated a claim under the NYCHRL because the relevant discriminatory conduct is not just the discriminatory termination that occurred in Plainview, but a continuing violation of her rights through a pattern of unspecificied discriminatory acts, most of which occurred in New York City. However, the Plaintiff's general allegation of "discriminatory acts", which do not identify any particular acts that allegedly occurred in New York City, are insufficient to state a claim under the NYCHRL. Indeed, the only claim the Plaintiff specifically asserts under the NYCHRL in the complaint is the allegation that the Defendants terminated her based on her age. Because termination is a discrete act, the Plaintiff must sufficiently allege that her discriminatory termination, standing alone, violated the NYCHRL. See Shah, 27 A.D.3d at 176, 806 N.Y.S.2d at 558 ("Shah asserts that Wilco's misconduct was not a singular act that occurred outside of New York City but rather a systematic and continuous course of conduct. Termination is, however, a discrete act") (citing N.Y.C. Admin. Code § 8-107(1)(a)). Thus, the Court's inquiry on this motion is limited to whether the Plaintiff has stated a claim under the NYCHRL for age discrimination based on her 2009 termination.

The parties do not dispute that the alleged discriminatory termination on April 24, 2009 occurred when the Plaintiff was employed at the Defendant's location in Plainview, outside of New York City. Nevertheless, the Plaintiff argues that because she worked for the Defendant in New York City up until three months before her termination it would be improper for the Court

7

to dismiss her NYCHRL claim because discovery could reveal that the Defendant made the decision to terminate her employment when they were still located in New York City.

However, as previously stated, it is the impact of the adverse action, and not the location where acts leading to the discrimination occur that gives rise to a claim under the NYCHRL. See id. ("[T]he locus of the decision to terminate here is of no moment. What is significant is where the impact is felt. Thus, even if the termination decision had been made in New York City, the NYCHRL would not apply since its impact on her occurred in New Jersey, not within the five boroughs."); Salvatore v. KLM Royal Dutch Airlines, No. 98-CV-2450, 1999 WL 796172, at *16 (S.D.N.Y. Sept. 30, 1999) ("The fact that certain acts leading to discrimination may occur in New York City will not necessarily give rise to a claim under the [NYCHRL]."). Indeed, the argument that a plaintiff could invoke the NYCHRL because the "decision to terminate" was made in New York City was explicitly rejected by the New York Court of Appeals in Hoffman v. Parade Publications, 15 N.Y.3d 285, 290–91, 907 N.Y.S.2d 145, 147–48, 933 N.E.2d 744, 746–47 (2010).

Although the decision in Hoffman applied to NYCHRL claims by nonresidents, the court's rationale is equally applicable to claims brought by residents. In particular, the Hoffman court rejected the ruling by the Appellate Division that a plaintiff could invoke the NYCHRL when the "discriminatory decision to terminate" was made in New York City not only because it inappropriately expanded NYCHRL protections to nonresidents working outside of New York City, but also because it was "impractical" and "would lead to inconsistent and arbitrary results". Id. Holding an employer liable under the NYCHRL for a "discriminatory decision to terminate" made in New York City based solely on its employees chosen residence would lead to the type of inconsistent and arbitrary results the New York Court of Appeals in Hoffman sought to avoid.

8

Cf. Fried, 2011 WL 4633985, at * 13 (holding that the goal of the Hoffman court in making the impact requirement simple and predictable "would be completely undermined if courts were required to conduct a fact-intensive analysis of the amount of contact a particular individual maintained with New York City even where it was undisputed that that individual did not work in New York City"); Duffy v. Drake Beam Morin, Harcourt Gen., Inc., No. 96-CV-5606, 1998 WL 252063, at *12 (S.D.N.Y. May 19, 1998) ("To hold otherwise would be to expand the [NYCHRL] to cover any employee who is fired pursuant to a decision handed down by an employer from its New York City headquarters, no matter where the employee in question actually works.").

However, regardless of where the Defendant made the decision to terminate her employment, the Plaintiff contends that because she is currently a New York City resident, and was a New York City resident throughout her 40-years of employment with the Defendant, the impact of the discrimination was felt within New York City.   To the contrary, a plaintiff's residence is irrelevant to the impact analysis, which "confines the protections of the NYCHRL to those who are meant to be protected—those who work in the city". Hoffman, 15 N.Y.3d at 291, 907 N.Y.S.2d at 148, 933 N.E. 2d at 747 (emphasis added).  Consistent with the territorial jurisdiction of the New York City Human Rights Commission and the rationale governing New York long-arm jurisdiction, the "impact" of discriminatory conduct occurs "within" New York City for purposes of the NYCHRL "*either* when the initial discriminatory act (for example, a termination) occurs in New York [City] *or* when the original experience of injury, which occurs at the employee's workplace, is in New York [City]." Rylott–Rooney v. Alitalia–Linee Aeree Italiane–Societa Per Azioni, 549 F. Supp. 2d 549, 554 (S.D.N.Y. 2008) (emphasis in original); Pierre v. Chem. Bank, 960 F. Supp. 21, 23 (E.D.N.Y. 1997) (holding that where the alleged

discriminatory events occurred outside of New York City, "[t]he City Commission had no subject matter jurisdiction over the alleged discrimination since its territorial jurisdiction does not extend to employment outside of New York City"); Lightfoot v. Union Carbide Corp., No. 92-CV-6411, 1994 WL 184670, at * 5 (S.D.N.Y. May 12, 1994) (dismissing NYCHRL claim on summary judgment where the plaintiff lived and often worked in New York City, the defendant had offices in New York City, and the plaintiff alleged the program involved in his termination was adopted in New York City, because the impact of his termination "occurred while he was employed in Connecticut . . . and the jurisdiction of the New York City Human Rights Commission does not extend to Connecticut").

Thus, where the alleged discriminatory act takes place outside of New York City, the relevant location of the injury for purposes of the impact analysis is not the Plaintiff's residence, but the Plaintiff's place of employment. See Ortiz v. Haier America Trading, LLC, 2011 N.Y. Slip Op. 31414U, 2011 N.Y. Misc. LEXIS 2577 (N.Y. Sup. Ct. May 24, 2011) (dismissing the plaintiff's NYCHRL claim despite the fact that the plaintiff was a New York City resident and the defendant was headquartered in New York City, because "the decision to terminate plaintiff, even if made in New York City, would have an impact at plaintiff's workplace in New Jersey"); Wahlstrom v. Metro–North Commuter Railroad Co., 89 F. Supp. 2d 506, 527 (S.D.N.Y. 2000) (dismissing a discrimination claim without any reference to the plaintiff's residency because "the alleged incidents took place in White Plains, New York, well outside the borders of New York City").

Here, the Plaintiff was terminated while an employee of the Defendant in Plainview. Thus, regardless of the Plaintiff's residency or whether the decision to terminate the Plaintiff was made in New York City, the NYCHRL does not apply because the impact of the termination was

10

felt at the Plaintiff's workplace in Plainview, outside the boundaries of New York City. Accordingly, the Court finds that the NYCHRL does not apply to the Plaintiff's age discrimination claim and grants the Defendant's motion to dismiss this cause of action.

## C. As to the Title VII Retaliation Claim

The Defendant moves to dismiss the Plaintiff's Title VII retaliation claim on the alternative grounds that the Plaintiff has failed to exhaust her administrative remedies and the Plaintiff has failed to state a claim. Because the Court ultimately grants the Plaintiff the opportunity to file an amended complaint, the Court deems it prudent to address both alleged grounds for dismissal.

### 1. Failure to Exhaust Administrative Remedies

Before filing a Title VII claim in federal court, a plaintiff must first exhaust all administrative remedies. Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 83 (2d Cir. 2001) ("Exhaustion of remedies is a precondition to [a] suit" under Title VII) (citing Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000)). Pursuant to Title VII, a charge of discrimination must be filed with the Equal Employment Opportunity Commission ("EEOC") within 180-days of any alleged unlawful employment practice or 300-days where there is a State or local agency with authority to grant or seek relief from such practice. 42 U.S.C. § 2000e-5(e)(1). Because New York has its own anti-discrimination laws and enforcement agency, the statute of limitations for filing a charge of discrimination with the EEOC is 300-days after the alleged occurrence of an unlawful employment practice. Id.; Harris v. City of New York, 186 F.3d 243, 247 n. 2 (2d Cir. 1999). Failure to timely file a charge with the EEOC renders the subject claim time-barred, preventing a claimant from bringing her claim in federal court. Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 133–34 (2d Cir. 2003).

It is undisputed that the Plaintiff's original charge, timely filed on May 4, 2009, did not include a claim for retaliation; that the Plaintiff filed an amended charge adding the retaliation claim based on the 1999 lawsuit; and that the EEOC Right to Sue Letter includes retaliation in the Plaintiff's causes of action. What is in dispute, however, is when the Plaintiff filed the amended charge. The Plaintiff alleges in the complaint that she filed the amended charge on September 10, 2009, approximately 140 days after she was terminated. However, according to the Defendant, the Plaintiff did not attempt to amend her original charge to include retaliation until September 23, 2010, three months after the NYSDHR issued a July 21, 2010 determination, and approximately 450 days after the Plaintiff was terminated. In addition, the Defendant argues that it was not given an opportunity to oppose the amended charge before an administrative body prior to the issuance of the EEOC Right to Sue Letter.

When a plaintiff files an amended charge, EEOC regulations provide that the allegations in the amended charge will "relate back" to the date the original charge was filed when the amendment alleges "additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge". 29 C.F.R. § 1601.12(b). If the retaliation claim in the amended charge does not relate back, and the amended charge was filed more than 300 days after the Plaintiff's termination, then the retaliation claim will be time-barred regardless of whether the Plaintiff followed the proper procedures in submitting the amended charge. Boata v. Pfizer, Inc., No. 10-CV-4390, 2010 WL 4878872, at *4 (S.D.N.Y. Dec. 1, 2010) ("Following NYSDHR procedures to amend one's complaint cannot save an untimely allegation of age discrimination."). However, contrary to the Defendant's contention, if the amended charge is not time-barred, then the fact that the Defendant was not given an opportunity to respond to the amended charge will not preclude the Plaintiff from asserting the retaliation

claim because "if an individual satisfactorily notifies the EEOC of her charge, she is not foreclosed from federal suit merely because the EEOC fails to follow through with notifying the employer and attempting to resolve the matter through conciliation, conference, and persuasion" Holowecki v. Fed. Express Corp., 440 F.3d 558, 567 (2d Cir. 2006) ("To require this would be to hold individuals accountable for the failings of the agency").

The original charge alleges only age, race, and national origin discrimination associated with the Plaintiff's termination and does not include any facts referencing the 1999 lawsuit or any of the alleged retaliatory acts that form the basis for the Plaintiff's retaliation claim in the amended charge. Thus, the Court finds that the retaliation claim does not grow out of the allegations in the original charge, and therefore cannot relate back to the date the original charge was filed. As a result, whether the amended charge was filed on September 10, 2009 as the Plaintiff contends, or September 23, 2010 as the Defendant contends, is determinative of whether the Plaintiff has exhausted her administrative remedies.

In deciding a motion to dismiss, the Court must accept the well-pleaded facts of the complaint as true. One exception to this rule is where a factual assertion in the complaint is "contradicted by the complaint itself, by documents upon which the pleadings rely, or by facts of which the court may take judicial notice". Perry v. NYSARC, Inc., 424 F. App'x 23, 25 (2d Cir. 2011). Thus, if the amended charge, which, as a relevant EEOC filing is incorporated by reference into the complaint, see Holowecki, 440 F.3d at 565–66, showed that it was filed more than 300 days after the Plaintiff's termination, the Court would not necessarily need to accept as true the allegation in the complaint that it was filed on September 10, 2009. However, neither party has provided the Court with copies of the document indicating when it was filed. Thus, for purposes of this motion, the Court accepts September 10, 2009 as the date the amended charge

13

was filed and finds that the Plaintiff has plausibly alleged that she exhausted her administrative remedies.  Accordingly the Court denies the Defendant's motion to dismiss the Title VII retaliation claim pursuant to Rule 12(b)(1) for failure to exhaust administrative remedies.

### 2.  Failure to State a Claim

In the complaint, the Plaintiff asserts that the Defendant violated Title VII by terminating her employment in 2009 in retaliation for the 1999 lawsuit.  In opposition to the instant motion, the Plaintiff further alleges that the Defendant retaliated against her for filing the 1999 lawsuit immediately upon her reinstatement in January of 2002 by placing her on the second floor, which was in violation of the 2001 settlement agreement and which resulted in her exposure to harmful toxins known to have caused her a work related injury.

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., forbids employment discrimination on the basis of "race, color, religion, sex, or national origin."  See 42 U.S.C. § 2000e-2(a).  "Title VII makes it unlawful for an employer to discriminate against an employee 'because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'"  Terry v. Ashcroft, 336 F.3d 128, 140–41 (2d Cir. 2003).  "Title VII is violated when a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause."  Id. (citing Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993)) (internal citations omitted).

With respect to the alleged retaliatory conduct occurring immediately following the Plaintiff's reinstatement in 2002, there is no dispute that these acts—occurring approximately seven years before the Plaintiff filed the amended charge—are time-barred.  Nevertheless, the Plaintiff claims that the Defendant's alleged retaliatory acts immediately following her

14

reinstatement in January 2002 are actionable under the continuing violation doctrine.  (Pl.'s Br. at 7 (stating that her "termination AND the continuing course of retaliatory conduct that preceded same are all actionable and adequately pleaded") (emphasis added).)  The Court disagrees.

Assuming that at least one discriminatory or retaliatory act occurred within the statutory time-period, the continuing violation doctrine "extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d. Cir. 1998) (internal citations and quotations omitted).  The Supreme Court articulated the proper use of the continuing violation exception in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002), holding that discrete discriminatory acts, "are not actionable if time barred, even when they are related to acts alleged in timely filed charges" and "each discrete discriminatory act starts a new clock for filing charges alleging that act." 536 U.S. at 113, 122 S. Ct. 2061.  It is well-settled that certain adverse employment practices such as termination, failure to promote or adequately compensate, undesirable work transfers, and denial of preferred job assignments are discrete acts and cannot be considered as part of an ongoing pattern or policy of discrimination. See Mix v. Delaware & Hudson Ry. Co., 345 F.3d 82, 89 (2d Cir. 2003) (citing Morgan, 536 U.S. at 114–15, 122 S. Ct. 2061).  In such cases, "each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice."  Morgan, 536 U.S. at 114, 122 S. Ct. 2061.

Here, the Plaintiff alleges that the Defendant retaliated against her immediately upon her return to work in January of 2002 by placing her on the second floor, which was in violation of

15

the 2001 settlement agreement, and which exposed her to harmful toxins. These allegations of

undesirable work transfers constitute discrete acts that are not actionable under the continuing

violation doctrine. Nevertheless, the Plaintiff contends these actions fall within the continuing

violation doctrine because every day that she remained employed and was not placed on the third

floor in compliance with the 2001 settlement agreement constituted retaliation. However, a

failure to remedy a discrete act of retaliation, which is a one-time event, does not rise to the level

of a discriminatory policy or practice. As the Supreme Court held in Morgan, the "mere

continuity of employment, without more, is insufficient to prolong the life of a cause of action

for employment discrimination." Id. at 113, 122 S. Ct. 2061. Accordingly, even if the Plaintiff

stated a timely claim for retaliation based on the 2009 termination, the Plaintiff has not stated a

claim for a continuing violation and cannot recover for any alleged retaliatory conduct that

occurred more than 300 days before the amended charge was filed.

In addition, the Court finds that the Plaintiff has failed to sufficiently allege that her 2009

termination was in retaliation for her 1999 lawsuit. In order to determine whether the Plaintiff

has pled a plausible claim for retaliation under Title VII based on her 2009 termination, the

Court weighs whether the Plaintiff has shown that "(1) [the Plaintiff] participated in a protected

activity known to the Defendant; (2) the Defendant took an employment action disadvantaging

[her]; and (3) there exists a causal connection between the protected activity and the adverse

action." Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007). The parties do not dispute that the

Plaintiff has sufficiently pled facts supporting the first two prongs of her retaliation claim: the

Plaintiff engaged in protected activity by filing the 1999 lawsuit; the Defendant was aware of

this activity; and the Defendant took adverse action against the Plaintiff by terminating her

employment on April 24, 2009. However, the Defendant asserts that the Court should dismiss

the Plaintiff's Title VII retaliation claim because she fails to plausibly allege any facts supporting a causal connection between the 1999 lawsuit and the 2009 termination.  Again, the Court agrees.

"[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000) (citing Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993) (citations omitted)); Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).

As an initial matter, the Plaintiff does not appear to dispute that, standing alone, the approximately ten years between her filing of the 1999 lawsuit and her 2009 termination does not support an inference of retaliation. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001) (holding that temporal proximity cannot support an inference of a causal connection unless the alleged retaliatory action and the protected activity were "very close" in time, and that a 20-month period after the protected activity "suggests, by itself, no causality at all"); Richardson v. New York State Dep't of Corr. Servs., 180 F.3d 426, 447 (2d Cir. 1999) (holding that no causal connection could be inferred from a two year gap between the protected activity and the adverse employment action).  Nevertheless, the Plaintiff argues that lengthy gap between the protected activity and retaliatory act will not foreclose a retaliation claim if the facts plausibly suggest that the gap was due to the defendant waiting for an "opportune time" to exact its retaliation.

17

According to the Plaintiff, although there was a significant amount of time between her protected activity, her return to work, and her termination, it is plausible that the Defendant waited until the move to Plainview to terminate her employment in retaliation for the 1999 lawsuit. The case that the Plaintiff relies upon to support this contention, Espinal v. Goord, 558 F.3d 119 (2d Cir. 2009), is distinguishable. In Espinal, the Second Circuit held that a plaintiff sufficiently alleged a causal connection between his lawsuit against prison guards and an alleged retaliatory assault on him by prison guards six months after the dismissal of the suit, because "[i]t [was] plausible that the officers waited to exact their retaliation at an opportune time—as when Espinal was involved in a fight with another inmate—in order to have a ready explanation for any injuries suffered by Espinal". Id. at 129. By contrast, in this case, the Plaintiff has not alleged any facts from which the Court can infer that three months after the move to the Plainview was a more "opportune time" to terminate her employment in retaliation for the 1999 lawsuit than any other time during the seven years following her reinstatement on January 28, 2002.

In addition, the Plaintiff argues that the "continuing course of discriminatory and retaliatory conduct" leading up to her termination supports an inference that her 2009 termination was in retaliation for the 1999 lawsuit. Under Second Circuit precedent, "an inference of discriminatory intent may be established by . . . the sequence of events leading to the plaintiff's discharge". Sassaman v. Gamache, 566 F.3d 307, 312 (2d Cir. 2009) (internal quotation marks and citations omitted). Thus, while the Plaintiff is precluded from asserting in this action any time-barred conduct as specific, compensable acts of retaliation under Title VII, allegations of time-barred conduct "may constitute relevant 'background evidence in support of a timely claim'". Petrosino v. Bell Atlantic, 385 F.3d 210, 220 (2d Cir. 2004) (quoting Morgan,

536 U.S. at 113, 122 S. Ct. 2061). However, the mere existence of other alleged retaliatory conduct does not automatically render a retaliation claim plausible. Rather, "[w]hen . . . an employee's allegations of retaliation extend beyond the limitations period, the circumstances surrounding the claim will determine precisely what consideration is owed to the time-barred conduct." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 176 (2d Cir. 2005).

The only allegation of discriminatory and retaliatory conduct following the 1999 lawsuit included in the complaint is the Defendant's placement of the Plaintiff on the second floor immediately following her reinstatement on January 28, 2002, and the Defendant's decision to place her in the stockroom as opposed to the third floor after she complained about the harmful toxins on the second floor. As the Second Circuit held in Espinal, it is the role of the Court to "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases". 558 F.3d at 129. Here, even accepting as true that the Defendant's actions immediately following the Plaintiff's reinstatement were in retaliation for the 1999 lawsuit, the Court finds that the approximately seven year gap between these retaliatory acts and the Plaintiff's 2009 termination is too lengthy to support an inference that the Plaintiff was terminated in retaliation for the 1999 lawsuit. Cf. Jute, 420 F.3d at 177 (holding that the district court erred in choosing not to consider time-barred allegations of retaliation when concluding that the plaintiff failed to establish the causal connection element of a prima facie case of retaliation where the time-barred conduct was a chain of similar retaliatory events that occurred within one year of the timely claim).

Engaging in protected activity does not entitle an employee to a lifelong presumption of retaliation for any adverse employment action. The significant amount of time between the 1999 lawsuit, the alleged subsequent acts of retaliation in 2002, and the Plaintiff's 2009 termination,

19

without any additional factual allegations suggesting the existence of a causal connection, belies

the plausibility of the Plaintiff's retaliation claim.  Accordingly, the Court grants the Defendant's

motion to dismiss the Title VII retaliation claim pursuant to Rule 12(b)(6) for failure to state a

claim.

**D. As to the Intentional Infliction of Emotional Distress Claim**

In order to state a claim for intentional infliction of emotional distress ("IIED"), the

Plaintiff must plausibly allege:  "(1) extreme and outrageous conduct; (2) intent to cause, or

reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal

connection between the conduct and the injury; and (4) severe emotional distress." Stuto v.

Fleishman, 164 F.3d 820, 827 (2d Cir. 1999).  Under New York law, IIED claims are subject to a

one year statute of limitations.  See N.Y. C.P.L.R. § 215(3); see also Overall v. Estate of Klotz,

52 F.3d 398, 402 (2d Cir. 1995).  However, "[w]hen the alleged offense is part of an ongoing

pattern of harassment, the continuing tort doctrine "'permit[s][a] plaintiff to rely on wrongful

conduct occurring more than one year prior to commencement of the action, so long as the final

actionable event occurred within one year of the suit.'" Manliguez v. Joseph, 226 F. Supp. 2d

377, 386 (E.D.N.Y. 2002) (quoting Shannon v. MTA Metro-North R.R., 269 A.D.2d 218, 704

N.Y.S.2d 208, 209 (2000).) (alterations in original); Moultrie v. VIP Health Care Sevs., No. 08-

CV-0457, 2009 WL 750219, at *7 (E.D.N.Y. Mar. 19, 2009) ("[F]or the continuing wrong

theory to apply at all, a plaintiff must establish a prima facie claim of intentional infliction of

emotional distress that occurred within the statute of limitations period.").

Here, the Plaintiff premises her IIED claim on the Defendant's alleged misconduct in

exposing her to years of sexual harassment; falsely terminating her employment in 1998;

immediately breaching the 2001 settlement agreement to reinstate her to her former position;

exposing her to harmful toxins known to have caused her a previous work-related injury; and terminating her employment in 2009 for discriminatory and retaliatory reasons. With the exception of the 2009 termination, all of this misconduct is alleged to have occurred prior to her 1998 termination or shortly after her reinstatement in January of 2002. As a result, this conduct is only relevant to the Court's consideration if the allegations underlying the Plaintiff's discrimination and retaliation claims for her 2009 termination, standing alone, are sufficient to state a claim for IIED. Nevertheless, as set forth below, even assuming the Court did consider the time-barred conduct, the Court would still find that the Plaintiff has failed to state a claim for intentional infliction of emotional distress.

"[T]he standard for stating a valid claim of intentional infliction of emotional distress is 'rigorous, and difficult to satisfy' [and] [t]he conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Conboy v. AT & T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (quoting Howell v. New York Post Co., 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699 (1993)). Where, as here, the plaintiff premises an intentional infliction of emotional distress claim on harassment, discrimination, or retaliation in the employment context, New York courts are particularly reluctant to find that such conduct is sufficiently extreme or outrageous to satisfy this demanding standard "absent a deliberate and malicious campaign against the plaintiff." Fertig v. HRA Medical Assistance Program, No. 10-CV-8191, 2011 WL 1795235, at *6 (S.D.N.Y. May 6, 2011); Gioia v. Forbes Media LLC, No. 09-CV-6114, 2011 WL 4549607, at * 12 (S.D.N.Y. Sept. 30, 2011) ("[C]ourts within this circuit have generally found allegations of discrimination, wrongful termination, and denial of benefits insufficient to satisfy the rigorous standard for extreme and outrageous conduct.") (collecting

cases); Semper v. New York Methodist Hosp., 786 F. Supp. 2d 566, 587 (E.D.N.Y. 2011) ("New

York Courts are reluctant to allow [IIED] claims in employment discrimination cases. . . . Acts

which merely constitute harassment, disrespectful or disparate treatment, a hostile environment,

humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of [IIED]

because the conduct alleged is not sufficiently outrageous.") (internal quotation marks and

citations omitted); Emmons v. City Univ. of New York, 715 F. Supp. 2d 394, 424 (E.D.N.Y.

2010) ("As a general proposition, adverse employment actions, even those based on

discrimination, are not sufficient bases for intentional infliction claims."); but see Polley v. Fed.

Reserve Bank, No. 92-CV-7114, 1994 U.S. Dist. LEXIS 11813, at *19 (S.D.N.Y. Aug. 23, 1994)

("New York courts have found that sexual harassment claims based on a pattern of harassment

may give rise to intentional infliction of emotional distress claims by virtue of being intolerable

conduct."); Collins v. Willcox, Inc., 158 Misc. 2d 54, 57, 600 N.Y.S.2d 884, 885 (N.Y. Sup. Ct.

1992) (holding that "sexual harassment can give rise to a claim for intentional infliction of

emotional distress").

In addition, the Second Circuit has held that "[w]hether the conduct alleged may

reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the

court to determine in the first instance." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999).

Thus, contrary to the Plaintiff's contention, courts can and frequently do dismiss intentional

infliction of emotional distress claims in a pre-answer motion where the conduct alleged, even

accepted as true, is not sufficiently outrageous as a matter of law. Schaer v. City of New York,

No. 09-CV-7441, 2011 WL 1239836, at *7 n. 4 (S.D.N.Y. Mar. 25, 2011) (stating that

intentional infliction of emotional distress is "an extremely disfavored cause of action under New

York law that is routinely dismissed on pre-answer motion"); see, e.g., Stuto, 164 F.3d at 827

(affirming dismissal of an intentional infliction of emotional distress claim on a Rule 12(b)(6) motion where the plaintiff failed to allege conduct that was sufficiently extreme and outrageous); Semper, 786 F. Supp. 2d at 587 (dismissing on a Rule 12(b)(6) motion the plaintiff's intentional infliction of emotional distress claim based on allegations in the employment context including a failure to promote, discrimination, retaliation, harassment, and termination because the plaintiff failed to show that the allegations rose to the "necessary level of outrageousness to sustain her claim").

Accepting as true that the Defendant unlawfully fired the Plaintiff based on her age and in retaliation for her filing of the 1999 lawsuit, the Court finds that these allegations are insufficient to meet the threshold for extreme and outrageous conduct necessary to sustain a claim for intentional infliction of emotion distress. Furthermore, the Plaintiff's allegations of harassment and retaliation occurring more than seven years before the Plaintiff's termination, and the Defendant's continued refusal to place her on the third floor in compliance with the 2001 settlement agreement does not even come close to establishing a "deliberate and malicious campaign" against the Plaintiff. Thus, the Court grants the Defendant's motion to dismiss the Plaintiff's intentional infliction of emotional distress claim.

### E. As to the Breach of Contract Claim

In the complaint, the Plaintiff alleges that the Defendant breached the provisions of the 2001 settlement agreement that required the Defendant to: (1) reinstate the Plaintiff to her original position on the second floor; and (2) not to discriminate against her. The Defendant moves to dismiss the Plaintiff's breach of contract claim as time-barred by the six-year statute of limitations.

Settlement agreements are contracts and therefore the same legal principles governing cases involving general contract disputes apply. See Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999); Goldman v. Comm'r of Internal Revenue, 39 F.3d 402, 405 (2d Cir. 1994). Thus, to state a claim for breach of a settlement agreement, a plaintiff must allege: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages. Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996).

Under New York law, a settlement agreement is subject to a six-year statute of limitations. See N.Y. C.P.L.R. § 213(2). "[A] cause of action for breach of contract accrues and the statute of limitations commences when the contract is breached." T & N PLC v. Fred S. James & Co. of N.Y., Inc., 29 F.3d 57, 59 (2d Cir. 1994) (citing Ely–Cruikshank Co., Inc. v. Bank of Montreal, 81 N.Y.2d 399, 402, 599 N.Y.S.2d 501, 502, 615 N.E.2d 985 (1993)). "Where a contract does not specify a date or time for performance, New York law implies a reasonable time period." Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007) (citing Schmidt v. McKay, 555 F.2d 30, 35 (2d Cir. 1977); Lituchy v. Guinan Lithographic Co., 60 A.D.2d 622, 400 N.Y.S.2d 158, 159 (2d Dep't 1977)). "If, however, a contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew." Id. at 150 (citations omitted).

The Plaintiff alleges that the Defendant breached the 2001 settlement agreement by failing to reinstate her to previous position when she returned to work and by exposing her to harmful toxins. Specifically, the Plaintiff states in her opposition brief that she returned to work on January 28, 2002, and was immediately "assigned to a different position and exposed to harmful toxins that defendant knew from prior medical treatment and reports that she could not

24

be exposed to". (Pl.'s Br. at 5.)  However, an agreement to reinstate the Plaintiff into her third-floor position did not require continuing performance, but rather a one-time obligation.  Cf. id. (holding that a contract required continuing performance where the defendant was required to contribute $10,000 per year to the plaintiff's pension fund).

Thus, the breach of the provision to place the Plaintiff on the third floor occurred on January 28, 2002, and the statute of limitations for asserting this breach expired on January 28, 2008.  The fact that the Defendant allegedly remained in breach of the contract by failing to reinstate the Plaintiff to her previous position, does not change the nature of the obligation into one for continuing performance.  To toll the statute of limitations under the continuing performance doctrine would "extend the statute of limitations into infinity" for every day the Plaintiff continued to work in the incorrect position.  See Callahan v. Credit Suisse Grp. S.A., No. 10-CV-4599, 2011 WL 4001001, at *6 (S.D.N.Y. Aug. 18, 2011) (finding that "the statute of limitations did not restart in April or May 2009 simply because Defendants continued negotiating in bad faith" when the plaintiff claimed that defendants negotiated in bad faith consistently since April of 2003).

The Plaintiff also alleges generally in the complaint that the 2001 settlement agreement contained a promise "not to discriminate against her" (Compl., ¶ 49), and more specifically in her opposition brief that the Defendant agreed to "make sure that Robles suffers no harassment, discrimination or negative impact at Cox from her claims made against Cox." (Pl.'s Br. at 4.) Although the Court does not have a copy of the 2001 settlement agreement, the Defendant does not deny that the 2001 settlement agreement, which is incorporated by reference into the complaint, contains the language quoted in the Plaintiff's opposition.  Thus, for the purposes of

this motion only, the Court presumes this is a valid and binding provision of the 2001 settlement agreement.

At this stage in the litigation, the Court cannot conclude that this provision did not impose a continuing obligation on the Defendant. As a result, if the Defendant terminated the Plaintiff in retaliation for the 1999 lawsuit, it could plausibly constitute a breach of the 2001 settlement agreement sufficient to state a breach of contract claim. However, as previously stated, the Court finds that the Plaintiff has not plausibly alleged a claim for retaliation based on her April 24, 2009 termination, and therefore has not sufficiently alleged that the Defendant breached the 2001 settlement agreement. Accordingly, the Court grants the Defendant's motion to dismiss the Plaintiff's breach of contract cause of action.

**F. Leave to Amend**

In opposition to the instant motion, the Plaintiff states that "in the event that the Court concludes that more specificity is required, plaintiff will promptly amend her complaint as she is freely allowed to do at this stage of the litigation." (Pl.'s Br. at 2.) Contrary to the Plaintiff's contention, Federal Rule of Civil Procedure 15(a) ("Rule 15(a)") does not permit a plaintiff to amend the complaint without leave of the court where, as here, more than twenty days has passed since the Defendant filed the motion to dismiss.

Rule 15(a) of the Federal Rules of Civil Procedure requires that courts freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). Thus, in the appropriate cases, it is the "usual practice upon granting a motion to dismiss to allow leave to replead." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (citations omitted). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d

26

Cir. 2007). At this stage in the litigation, the Court does not find bad faith, undue delay or undue prejudice to the opposing party to be of concern. Accordingly, the Court will address the futility of permitting the Plaintiff to amend the causes of action dismissed herein.

Although the Plaintiff refers throughout her opposition to a 40 year "continuing course of discriminatory and retaliatory conduct", the only conduct identified with any specificity are the Defendant's alleged retaliatory acts immediately following her reinstatement in January 2002. As previously stated, these discrete acts of retaliation occurring approximately seven years prior to her termination are insufficient to establish a continuing violation, or to plausibly support that her 2009 termination was also in retaliation for her 1999 lawsuit. Although the Court is skeptical that any further level of specificity or factual allegations can revive the claims dismissed herein, in light of the liberal policy governing amendment of pleadings at this early stage in the litigation, the Court grants the Plaintiff twenty days from the date of this order to file an amended complaint. However, in so doing, the Court cautions the Plaintiff to consider the above-stated holdings and caselaw, and to be mindful of any applicable statutes of limitations.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the Defendant's Rule 12(b)(6) motion to dismiss the NYCHRL discrimination claim is granted, and it is further

**ORDERED**, that the Defendant's Rule 12(b)(1) motion to dismiss the Title VII retaliation claim for failure to exhaust administrative remedies is denied, and it is further

**ORDERED**, that the Defendant's Rule 12(b)(6) motion to dismiss the Title VII retaliation claim for failure to state a claim is granted,

27

**ORDERED**, that the Defendant's Rule 12(b)(6) motion to dismiss the Plaintiff's claim for intentional infliction of emotional distress is granted, and it is further

**ORDERED**, that the Defendant's Rule 12(b)(6) motion to dismiss the Plaintiff's breach of contract claim is granted, and it is further

**ORDERED**, that the Plaintiff is afforded twenty days from the date of this order to file an amended complaint as to the causes of action dismissed herein.

**SO ORDERED.**
Dated: Central Islip, New York
January 10, 2012


_/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge

28