UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CARMEN ROBLES,

        Plaintiff,

   -against-

COX AND COMPANY, INC,

        Defendant.
----------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
11-CV-1975 (ADS) (GRB)

**APPEARANCES:**

**Law Offices of Adeline Ellis**
*Attorney for the Plaintiff*
P.O. Box 544
Great Barrington, MA 01230
    By: Adeline Ellis, Esq., Of Counsel

**Clifton, Budd & DeMaria, LLP**
*Attorneys for the Defendant*
420 Lexington Ave., 4th Floor
New York, NY 10170
    By: Jennifer M. Marrinan, Esq., Of Counsel

**SPATT, District Judge.**

On April 21, 2011, the Plaintiff Carmen Robles (the "Plaintiff") commenced this lawsuit against her former employer, Cox and Company, Inc. (the "Defendant"), alleging that, by terminating her employment, the Defendant engaged in unlawful age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e et seq.; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq.; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(1)(a) et seq. The Plaintiff also brought a claim for retaliation under Title VII and claims for breach of express and implied contract and intentional infliction of emotional distress under New York common law. Thereafter, by Order

1

dated January 10, 2012, the Court dismissed all but the Plaintiff's claims for age discrimination under the ADEA and the NYSHRL.

Presently before the Court is the Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56. For the reasons that follow, the Defendant's motion is granted and the Plaintiff's action is dismissed in its entirety.

## I. BACKGROUND

The Defendant in this case is an engineering-driven manufacturer for the aerospace industry and has been in continuous business operation for approximately fifty years. Its business involves designing, developing, testing and manufacturing temperature control and de-icing equipment. Initially located in New York City, the Defendant relocated to Plainview, New York, in January of 2009.

The Plaintiff was born on July 10, 1945. On July 30, 1968, the Plaintiff began her employment with the Defendant in a position that involved ironing and cementing a special device. Soon thereafter, she began a new position with the Defendant doing soldering on an assembly line.

On October 9, 1998, the Defendant terminated the Plaintiff on the ground that the Plaintiff hid blueprints in her locker. The Plaintiff contested her termination, claiming that the Defendant's stated reason concerning the blueprints was only a pretext for her termination. In this regard, the Plaintiff brought an action against the Defendant, asserting allegations of quid pro quo sexual harassment, hostile work environment and retaliation ("the 1999 lawsuit"). However, in 2001, the Plaintiff and the Defendant reached a settlement in which the Defendant agreed to reinstate the Plaintiff to her former position on the assembly line as a solderer on the third floor and to cease discriminating against her.

On January 28, 2002, the Plaintiff returned to work. However, instead of resuming her former position on the third floor, the Plaintiff was assigned by the Defendant to the second floor. According to the Defendant, the Plaintiff was assigned to the second floor rather than the third floor because the wife of her alleged sexual harasser worked on the third floor.

While on the second floor, the Plaintiff was exposed to harmful toxins and fiberglass. Prior to the 1999 lawsuit, the Plaintiff had allegedly received a job-related injury due to exposure to these same toxins and fiberglass. The Plaintiff's attorney intervened and threatened to return to court. As such, in 2002, the Defendant relocated the Plaintiff from the second floor to the stockroom. The Plaintiff remained in the stockroom until the time her employment was terminated in April of 2009. Her duties included working with the wires, using the wire cutting machine, changing the wires and numbering the wires. According to the Plaintiff, while working in the stockroom, the Defendant did not discriminate against her and no one who worked for the Defendant ever made a discriminatory remark concerning her age. She also never made any complaints, including complaints of age discrimination, to anyone who worked for the Defendant.

Three other full-time employees worked in the stockroom with the Plaintiff: Henrietta Leka ("Leka"), Sonia Morales ("Morales") and the Plaintiff's direct supervisor, Marie Buice ("Buice"). Leka was born on October 21, 1957; Morales was born on March 7, 1964; and Buice was born on February 1, 1955. Buice reported to Charlie Klee ("Klee"), who was the stockroom supervisor, as well as the materials managers. He was born July 28, 1947. In addition, Monica Carrillo ("Carrillo") also worked in the stockroom part-time, but was a "floater" who worked in other departments besides the stockroom. She was born on August 31, 1961.

Both Buice and Morales used the stockroom's computer system, but the Plaintiff was unable to, due to her limited English skills. Further, while Morales and Leka consistently received ratings of "excellent" on their annual performance reviews, the Plaintiff generally received "average" and "above average" ratings. (See Marrinan Aff., Exhs. 4–6.)

On April 10, 2006, James Jaffe ("Jaffe") was hired by the Defendant as the Chief Financial Officer ("CFO"). He was born on March 28, 1955. As CFO for the Defendant, Jaffe's responsibilities included overseeing tax and accounting, human resources and information technology. Of relevance here, concerning his human resources duties, Jaffee compiled the Defendant's anti-discrimination policies into a handbook, which was published in 2009.

Upon beginning his position as CFO, Jaffe met with then-President Stephen Landry ("Landry") and Chairman Warren Achenbaum ("Achenbaum"). Jaffe advised Landry and Achenbaum that in order for the Defendant to survive, they would need to cut expenses. In his deposition testimony, Jaffee explained that the Defendant's 2007 and 2008 sales had dramatically declined and that the Defendant had serious financial concerns and losses. According to Jaffee, the Defendant considered many different avenues for decreasing expenses, including filing for Chapter 11 bankruptcy; raising borrowing limits from banks; postponing payments to vendors; and reducing the work force through layoffs.

As such, beginning in September of 2007 until April of 2009, the Defendant implemented a reduction-in-force. In this regard, the Defendant laid off fifty-two of its employees, but retained 135 employees. The fifty-two terminated employees were born in years ranging from 1945 to 1985, while the 135 retained employees were born in years ranging from 1936 to 1989. The layoffs occurred in five waves, with the fifth and final group being laid off in April 2009. All departments were affected by the layoffs.

With respect to the stockroom, Jaffee testified that the Defendant's managers determined that at least one person from the stockroom's four full-time employees had to be laid off. Management did not consider Carillo when making this evaluation, because she only worked part-time in the stockroom. According to Jaffee, management selected the Plaintiff for layoff because (1) her performance evaluations were average as compared with the other stockroom employees, who consistently received "excellent" ratings and (2) her skills were limited as compared with the other stockroom employees, in that she primarily worked with the wires, could not use the stockroom's computer system and had limited English language skills. Jaffee claims that, during the course of making the layoff decision, management gave no consideration to either the Plaintiff's age or to the age of any other stockroom employee.

Thus, on April 24, 2009, the Plaintiff's employment was terminated as part of the last wave of layoffs. Buice's employment was also terminated in April of 2009. In the termination letter that the Defendant sent the Plaintiff, the Defendant asserted that the Plaintiff's termination was due to "an economic downturn" and "in no way reflect[ed] [the Plaintiff's] performance in [her] job." (Ellis Aff., Exh. B.)

The Plaintiff testified at her deposition that she did not know why there were layoffs and that no one working for the Defendant ever explained to her the reason for why she was terminated from her employment. However, the Plaintiff also testified that when she was fired, she met with Klee and two additional employees of the Defendant, Diana Lopez and Munesh Persaud, who told her that the layoffs were a result of the economy.

Following the Plaintiff's layoff, her job duties were absorbed by the remaining stockroom employees. Although no one was hired to replace the Plaintiff in the stockroom, in December of 2010, Timothy Mullins ("Mullins") was transferred from the shipping department to the

stockroom, allegedly when the volume of the Defendant's business was picking up. Nevertheless, Mullins has different job responsibilities in the stockroom than those responsibilities that had been previously performed by the Plaintiff.

After her employment was terminated, on April 30, 2009, the Plaintiff filed a complaint of discrimination with the NYSDHR. In her complaint, the Plaintiff alleged that she was discriminated against because of her age and that the Defendant fired her so "they could hire someone new [and] pay them half." (Marinann Aff., Exh. 8.) However, she admitted at her deposition that during her employment she never witnessed the Defendant terminate an employee and then hire someone new and pay them half.

On May 7, 2009, the NYSDHR sent a copy of the Plaintiff's NYSDHR complaint to the Defendant and requested that the Defendant return to the NYSDHR a completed Respondent Information sheet. In response, on May 18, 2010, the Defendant emailed the NYSDHR investigators and advised that the Plaintiff was one of four employees who had worked in the stockroom and one of two employees from the stockroom who had been laid off. On May 28, 2010, the NYSDHR investigator requested additional information, to which the Defendant responded via email on June 7, 2010. In its June 7, 2010 email, the Defendant claimed to have evaluated the skills of the five stockroom employees, including part-time employee Carrillo, in order to decide whose employment would be terminated as part of a forty-percent reduction in stockroom personnel. The Defendant also detailed its financial difficulties.

On July 19, 2009, the NYSDHR issued a Final Investigation Report and Basis of Determination (the "Report"). In the Report, the NYSDHR found probable cause to support the Plaintiff's allegations of age discrimination based on the following: (1) the Plaintiff was the most senior employee in her assigned work area, having been hired on July 21, 1968; (2) the

Defendant failed to offer the Plaintiff the opportunity to maintain her employment at a reduced salary or schedule; (3) the Plaintiff's claim that she could perform all the stockroom tasks that were performed by Morales, Leka and Carrillo; and (4) the Plaintiff was the only one of the fifty-two employees who were laid off that was hired during the sixties. (Ellis Aff., Exh. A.) However, the NYSDHR also noted that the Defendant "laid-off fifty-two employees to reduce its staff; forty-six of which are substantially younger than [the Plaintiff]." (Ellis Aff., Exh. A.)

At some point thereafter, the Plaintiff requested that the NYSDHR dismiss the complaint and annul the election of remedies so that the case could be pursued in court. On December 6, 2010, the administrative law judge issued an order recommending that the Plaintiff's request for an annulment of the election of remedies be granted. On January 7, 2011 the NYSDHR adopted the recommendation and dismissed the complaint. On March 18, 2011, the EEOC dismissed the Plaintiff's NYSDHR complaint based on her decision to pursue the matter in court, and issued a right-to-sue letter ("EEOC Notice").

Within ninety days of the EEOC Notice, on April 21, 2011, the Plaintiff commenced this lawsuit and asserted causes of action for age discrimination, retaliation, breach of express and implied contract and intentional infliction of emotional distress. As indicated above, all but the age discrimination claims pursuant to the ADEA and the NYSHRL were subsequently dismissed by Court Order dated January 10, 2012.

## II. DISCUSSION

### A. Legal Standard on a Fed. R. Civ. P. 56 Motion for Summary Judgment

It is well-settled that a motion for summary judgment under Fed. R. Civ. P. 56 may be granted by the Court only if the evidence presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see also Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("Rule 56(c) provides that the trial judge shall then grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law."); Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) ("Summary judgment is appropriate where there exists no genuine issue of material fact and based on the undisputed facts, the moving party is entitled to judgment as a matter of law.") (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)) (internal brackets omitted). However, the Court must endeavor to resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion for summary judgment. Anderson, 477 U.S. at 247–48.

Once a party moves for summary judgment, the non-movant must come forward with specific facts showing that a genuine issue exists to avoid the motion being granted. West-Fair Elec. Contractors v. Aetna Cas. & Surety Co., 78 F.3d 61, 63 (2d Cir. 1996); see also Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed. R. Civ. P. 56(e)). Typically, a genuine issue of material fact exists only if "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see Vann v. New York City, 72 F.3d 1040, 1049 (2d Cir. 1995). In addition, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

**B. Legal Standard Under the ADEA and the NYSHRL**

Claims brought under the ADEA and the NYSHRL are analyzed under the same standard. See Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) ("Althourgh there are differences between the State HRL . . . and the federal [ADEA], age discrimination suits brought under the State HRL . . . are subject to the same anaylsis as claims

8

brought under the ADEA.") In relevant part, the ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, the NYSHRL proscribes an employer, "because of an individual's age," from "discharg[ing] from employment such individual or [ ] discriminat[ing] against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a).

With the exception of one modification discussed in further detail below, a claim brought pursuant to the ADEA or the NYSHRL is "analyzed under the burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), pursuant to which the plaintiff has the burden of demonstrating that his or her age was a motivating factor in the adverse employment action." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010). The Court pauses here to briefly note that the Supreme Court has not "definitively decided" whether McDonnell Douglas burden-shifting used in Title VII cases applies to ADEA claims. Gross v. FBL Financial Services, Inc., 557 U.S. 167, 175, 129 S. Ct. 2343, 2349 n.2, 174 L. Ed. 2d 119 (2009). Nevertheless, the Second Circuit has "held that 'we remain bound by, and indeed see no reason to jettison, the burden-shifting framework for ADEA cases that has been consistently employed in our Circuit.'" Timble v. Eli Lilly & Co., 429 F. App'x 20, 21 (2d Cir. 2011) (quoting Gorzynski, 596 F.3d at 106). Thus, this Court will continue to apply the McDonnell Douglas burden-shifting framework to claims arising under the ADEA.

Under McDonnell Douglas, a plaintiff alleging age discrimination must first "establish a prima facie case" by "show[ing] (1) that she was within the protected age group [meaning she

was over the age of forty], (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." Gorzynski, 596 F.3d at 106 (citing Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir.2000)); see also Williams v. County of Nassau, 684 F. Supp. 2d 268, 293 (E.D.N.Y. 2010) (noting that for purposes of age discrimination, a plaintiff bringing an age discrimination lawsuit is considered a member of the protected class if she is over the age of forty). This "initial burden" is "'minimal' and 'de minimis.'" Andretta v. Napolitano, 922 F. Supp. 2d 411, 418 (E.D.N.Y. 2013). However, "it 'is not non-existent" and "[s]ummary judgment must be granted whenever the undisputed facts, viewed most favorably to the non-moving plaintiff, do not make a prima facie case." Id. (quoting it Almond v. Westchester County Dep't of Corrections, 425 F. Supp. 2d 394, 399 (S.D.N.Y. 2006)) (original brackets omitted).

Provided the plaintiff demonstrates these elements, thereby establishing a prima facie case of age discrimination, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. Spence v. Maryland Cas. Co., 995 F.2d 1147, 1155 (2d Cir. 1993). If the defendant carries this burden, the burden shifts back to the plaintiff to introduce evidence that the defendant's explanations are pretextual. Id.

In order to satisfy her burden at the final stage, in contrast with the mixed-motive analysis applied in Title VII cases, a plaintiff must offer evidence that age discrimination was the "but-for" cause of the challenged actions rather than "just [being] a contributing or motivating factor." Gross, 557 U.S. at 176; Gorzynski, 596 F.3d at 106. Further, a plaintiff must offer "hard evidence, not conclusory supposition[,] that the defendant's articulated rationale is a pretext for discrimination." Schanfield v. Sojitz Corp. of America, 663 F. Supp. 2d 305, 329 (S.D.N.Y. 2009) (citing McDonnell Douglas Corp. v. Green, 411 U.S. at 804). "A reason cannot be proved

to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." Id. (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)) (emphasis in original). In this way, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Yu v. N.Y. City Hous. Dev. Corp., 494 F. App'x 122, 135 (2d Cir. 2012) (quoting Tex Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). See also Whitting v. Locust Valley Cent. School Dist., No. 10–cv–0742 (ADS)(ETB), 2012 WL 5286617 (E.D.N.Y. Oct. 22, 2012) (Spatt, J.).

## C. As to the Plaintiff's ADEA and NYSHRL Claims of Age Discrimination

The Defendant first argues that it is entitled to summary judgment because the Plaintiff has failed to make out a prima facie case for age discrimination under the ADEA and NYSHRL. In this regard, while the Defendant does not dispute that the Plaintiff satisfied the first three prongs of a prima facie case, it contends that the Plaintiff cannot satisfy the fourth prong. The Plaintiff also argues, even assuming the Plaintiff has established a prima facie case, it has met its burden of setting forth non-discriminatory reasons for its action and the Plaintiff has not offered any evidence that these reasons are pretextual.

As stated above, the fourth prong of a prima facie case requires the Plaintiff to demonstrate that the adverse employment action – here, the Plaintiff's termination – "occurred under circumstances giving rise to an inference of discrimination." Gorzynski, 596 F.3d at 106. The Second Circuit has held that "an inference of discriminatory intent may be derived from a variety of circumstances, including . . . the more favorable treatment of employees not in the protected group." Trachtenberg v. Dep't of Educ. of City of New York, 937 F. Supp. 2d 460,

11

470 (S.D.N.Y. 2013) (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009)); see also Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (holding that an inference of discrimination may be drawn either from (1) direct evidence of discriminatory intent, or (2) a showing by the Plaintiff that "she was subjected to disparate treatment . . . [compared to persons] similarly situated in all material respects to . . . herself") (internal quotations and citations omitted). "An employee is similarly situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" Trachtenberg, 937 F. Supp. 2d at 471 (quoting Ruiz v. Cnty of Rockland, 609 F.3d 486, 493–94 (2d Cir. 2010) (in turn, quoting Graham, 230 F.3d at 40)). However, "[t]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of [the] plaintiff's and comparator's cases, rather than a showing that both cases are identical. In other words, the comparator must be similarly situated to the plaintiff in all material respects." Id. (quoting Ruiz, 609 F.3d at 493–94.)

In this case, the Court finds that the Plaintiff has not established a prima facie case of age discrimination, since it appears she cannot demonstrate that the termination of her employment with the Defendant occurred under circumstances giving rise to an inference of discrimination. However, even assuming that the Plaintiff has made out a prima facie case, the Court finds that the Defendant has satisfied its burden of articulating non-discriminatory reasons for its decision to terminate the Plaintiff, and the Plaintiff has failed to proffer any evidence that would indicate that the Defendant's explanation is actually pretextual.

Indeed, even when viewing the summary judgment record in the light most favorable to the Plaintiff, as the non-moving party, the evidence before the Court indicates that, in the face of serious financial difficulties, the Defendant implemented a significant reduction-in-force,

12

whereby it laid off fifty-two workers, which was a little less than one-third of all its employees. "Such financial motivations are legitimate business reasons for an employment action[.]'" Abdu-Brisson, 239 F.3d at 469 (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 611, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993)). While it is true that the Plaintiff was the oldest of the employees who worked in the stockroom, a review of the ages of the fifty-two laid off employees compared to the 135 retained employees reveals that (1) the Defendant retained a number of employees who were in the protected class – that is, over the age of forty – and (2) all ages were affected by the reduction in force, including employees well below the age of forty. "[T]he fact 'that younger employees were dismissed along with the plaintiff refutes rather than supports [her] claim of age discrimination.'" Chin v. ABN-AMRO North America, Inc., 463 F. Supp. 2d 294, 303 (E.D.N.Y. 2006) (quoting Kahn v. Pepsi Cola Bottling Group, 547 F. Supp. 736, 739 (E.D.N.Y. 1982) (granting summary judgment in favor of the defendant where the defendant also terminated other employees who were younger than the plaintiff)).

In addition, the Plaintiff has offered no evidence that she was ever discriminated against based on her age. In fact, she even admitted during her deposition that she never experienced any kind of discrimination while she was employed by the Defendant and working in the stockroom. See Gupta v. New York City School Const. Authority, 305 F. App'x 687 (2d Cir. 2008) (upholding the district court's holding that the plaintiff failed, as a matter of law, to demonstrate a prima facie case of age discrimination where (1) the defendant terminated the plaintiff's employment as part of a reduction-in-force, even though it retained younger employees; and (2) the plaintiff "did 'not allege[ ] any animus, any derogatory comments, or anything else' that would raise an inference of discrimination") (citation omitted).

13

Of importance, the fact that the Plaintiff, at the time of her termination, was sixty-four years old, "standing alone, particularly in the context of a group-termination [reduction-in-force], cannot support her discrimination claims." Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP, 869 F. Supp. 2d 378, 394 (S.D.N.Y. 2012). In this regard, where "it is undisputed," as it is here, "that [the] [p]laintiff was terminated as part of a department-wide [reduction-in-force], that no one was hired to replace [her], and [her] remaining colleagues assumed [her] duties," courts in this circuit have granted summary judgment in favor of the defendant. Sgarlata v. Viacom, Inc. No. 02 Civ. 7234(RCC), 03 Civ. 5228(RCC), 2005 WL 659198, at *7 (S.D.N.Y. Mar. 22, 2005); see also Kitrell v. Dep't of Citywide Administrative Services Div. of Personnel, No. 10–CV–2606 (NGG)(RLM), 2013 WL 2395198, at *15–16 (E.D.N.Y. May 31, 2013).

Moreover, equally important, when the Plaintiff was terminated, the two stockroom employees who were retained were ages fifty-one and forty-five, while the stockroom supervisor was sixty-one, and thus, all within the protected class. "Under these circumstances, no inference of age . . . discrimination can be drawn." Zito, 869 F. Supp. 2d at 395 (noting that the retained employees, who were older the age of forty, were within the same protected class as the Plaintiff). In addition, Jaffee participated in the decision to terminate the Plaintiff and he was fifty-four years old at the time, "which also precludes an inference of age . . . discrimination." Id.; see also Prisana v. Merril Lynch & Co., No.93–451(LMM), 1995 WL 438715, at *5 (S.D.N.Y. July 24, 1995) (finding that the "fact that these decision makers were close to [the plaintiff's] age . . . weakens any suggestion of age discrimination").

Nevertheless, the Court recognizes that while "[a] *bona fide* reduction in workforce is a legitimate non-discriminatory reason for terminating an employee[,] . . . [an] employer may not discharge an employee 'because' of his age," but should instead decide which employees to let

14

go based on, for example, "whose performance and qualifications are lacking relative to other employees." Chuang v. T.W. Wang Inc., 547 F. Supp. 2d 221, 234 (E.D.N.Y. 2009). Here, as the summary judgment record demonstrates, the Plaintiff's performance was generally evaluated as average and she admitted at her deposition that she only had a narrow skill set that involved working with the wires. In contrast, Leka's and Morales's performance was frequently evaluated as excellent. They also were able to contribute in more areas, such as being able to use the stockroom's computer system.

As such, the Court finds that the Defendant had legitimate non-discriminatory reasons to select the Plaintiff to be laid off rather than Leka or Morales. The Plaintiff has proffered no evidence beyond her own speculation and her conclusory assertions that would suggest that these reasons were actually pretextual. See id.; see also Ruszkowski v. Kaleida Healthy Sys., 422 F. App'x 58, 60 (2d Cir. 2011) ("A plaintiff cannot establish a prima facie case based on 'purely conclusory allegations of discrimination, absent any concrete particulars.'") (quoting Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.1985)); Garcia v. Henry Street Settlement, 501 F. Supp. 2d 531, 545 (S.D.N.Y. 2007) ("[M]ere conclusory allegations, speculation, or conjecture will not avail a party resisting summary judgment." ). Accordingly, she has not satisfied her burden with respect to the final stage of the McDonnell Douglas burden-shifting framework.

To the extent the Plaintiff relies on the NYSDHR Report, the Court finds this argument unavailing. First, "the NYSDHR Determination addressed only the question of probable cause, i.e., that 'there is sufficient evidence of . . . discrimination and retaliation . . . to warrant a public hearing,'" which "is a far more lenient standard than" the Plaintiff's burden here. Dollman v. Mast Industries, Inc., No. 08 Civ. 10184(WHP), 2011 WL 3911035, at *1 (S.D.N.Y. Sept. 6, 2011). Indeed, as previously discussed, in order to show that the Defendant's non-discriminatory

reasons were actually pretextual, the Plaintiff must offer evidence that age discrimination was the "but-for" cause of her termination rather than "just [being] a contributing or motivating factor," Gross, 557 U.S. at 176, as well as offer "hard evidence, not conclusory supposition[,] that the defendant's articulated rationale is a pretext for discrimination," Schanfield, 663 F. Supp. 2d at 329.

Further, the Court finds that the NYSDHR erred in basing its determination on the following facts: (1) that the Plaintiff had been hired in the 1960s and thus had been employed by the Defendant for approximately forty years; and (2) that the Defendant did not offer the Plaintiff opportunity to work part-time or at a reduced salary. Nothing in the ADEA or the NYSHRL suggests that these are sufficient grounds for finding age discrimination or that seniority is a protected characteristic. In addition, the Court notes that the Defendant did not offer any of the fifty-two laid-off employees an opportunity to work part-time or at a reduced salary, regardless of their age, and that these fifty-two employees ranged in their levels of seniority.

Lastly, the Plaintiff appears to offer a strained argument that the Defendant, by now arguing that the Plaintiff's termination was due to her average performance and limited skill sets, has somehow contradicted the April 24, 2009 termination letter that stated that the Plaintiff's termination in no way reflected her job performance. However, as the Defendant succinctly explained in its reply memorandum of law,

> [t]he fact that [the Defendant], having to select one of the [s]tockroom employees for layoff, considered each employee's skill set and past performance review does not mean that [the Plaintiff] or any other [ ] employee [of the Defendant] was terminated for poor performance. If [the Defendant had not experienced the economic downturn, it would not have laid off these employees.

(Def. Reply Mem., pg. 8.) The Court agrees with the Defendant's explanation.

16

Accordingly, the Court finds that the Defendant is entitled to summary judgment as a matter of law on the Plaintiff's age discrimination claims brought pursuant to the ADEA and NYSHRL. The Plaintiff's case is dismissed in its entirety.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56 is granted in its entirety. The Plaintiff's Complaint is dismissed in its entirety and the Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
November 23, 2013

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge